UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI KNOP, #661291,

|  |  |  |
|---|---|---|
|  | Plaintiff, | Civil Action No. 14-10185 |
|  |  | Honorable Linda V. Parker |
| v. |  | Magistrate Judge David R. Grand |

MILLICENT WARREN, *et al.*,

Defendants.

_____/

## REPORT AND RECOMMENDATION TO GRANT THE MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [57] AND TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [75]

Before the Court is the motion for summary judgment filed by numerous defendants employed (or formerly employed) by the Michigan Department of Corrections ("MDOC") on July 17, 2014. (Doc. #57). On August 22, 2014, Plaintiff Lori Knop ("Knop"), who formerly was incarcerated at an MDOC facility but currently is on parole, filed a pleading which provides her response to the MDOC Defendants' motion and contains a cross-motion for summary judgment against these defendants. (Doc. #75). An Order of Reference was entered on May 13, 2014, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). (Doc. #25). The Court finds that the facts and legal issues are adequately presented in the briefs and on the record and declines to order a hearing at this time.

## I.     RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the MDOC Defendants' Motion for Summary Judgment [**57**] be **GRANTED** and that Knop's Motion for Summary Judgment [**75**] be **DENIED**.

II.    **REPORT**

    A.    **Background**

At all relevant times, Knop was a state prisoner confined at the Women's Huron Valley Correctional Facility ("WHV") in Ypsilanti, Michigan.  According to Knop's 77-page complaint (excluding attachments), she is bringing an Eighth Amendment denial-of-medical-care claim because she was allegedly deprived of Armour Thyroid Hormone for a five-month period (from September 2012 to January 2013).  Knop, who is missing a thyroid gland, alleges that, absent this hormone, she was at serious risk of excessive blood loss and anemia, and that the defendants, in denying her that medicine, were deliberately indifferent to her serious medical needs.  Additionally, Knop alleges that some of the defendants placed inaccurate information in her presentence investigation report.

Knop's complaint names 34 defendants, and the supplemental complaint she filed on April 1, 2014, names two additional defendants.  (Docs. #1, 9).  On May 9, 2014, the District Court entered an order summarily dismissing Defendants Swartz, Warschock, Eagen, and the Bureau of Health Care Services.  (Doc. #22).  Most, but not all, of the remaining defendants have now been served.[1]

On July 17, 2014, the instant motion for summary judgment was filed by the following thirteen defendants, all of whom are (or were, at all relevant times) employed by the MDOC: Millicent Warren, Daniel Heyns, Haresh Pandya, M.D., Pam Friess, Paul Slagter, Pam Sanders, Lana McCarthy, Joyce Jackson, James Widgeon, Norris McCrary, John Macari, Deborah Shinabery, and Jeffrey Zinbarg (collectively the "MDOC Defendants").  (Doc. #57).  The

---

[1] On January 14, 2015, this Court ordered Knop to show cause, on or before January 30, 2015, why this action should not be dismissed without prejudice as to the seven named defendants who have not yet been properly served.  (Doc. #105).  To date, Knop has not responded to this order to show cause.

MDOC Defendants argue that summary judgment is appropriate because Knop has failed to establish that they were deliberately indifferent to her serious medical needs, and because Knop's claims against them are barred by the doctrine of qualified immunity. On August 22, 2014, Knop filed a single pleading that is both a response to the MDOC Defendants' motion, and a cross-motion for summary judgment on her Eighth Amendment claims against these defendants. (Doc. #75). No response or reply was filed.

### B.      Standard of Review

When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits. *See Federal Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 415 F.3d 487, 493 (6th Cir. 2005). Federal Rule of Civil Procedure 56 provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

When the party without the burden of proof (generally the defendant) seeks summary judgment, that party bears the initial burden of informing the court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies

its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).  In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989)).  Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id.* (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).  "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id.* at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

A moving party with the burden of proof (typically the plaintiff) faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).  As set forth above, the moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial.  "But where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. U.S.*, 799 F.2d 254, 259 (6th Cir. 1986) (internal citations omitted).  Accordingly, summary judgment in favor of the plaintiff "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Harris v. Kowalski*, 2006 WL 1313863, at *3 (W.D. Mich. May 12, 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)).

### C.    Analysis

In their motion, the MDOC Defendants argue that summary judgment is appropriate

4

because Knop's allegations do not establish the requisite level of personal involvement necessary for liability under §1983 and/or do not establish an Eighth Amendment deliberate indifference claim against them.[2]  (Doc. #57).  These arguments are addressed below.

### 1. The Requisite Level of Personal Involvement of Defendants Warren, Heyns, Friess, McCarthy, Jackson, and Zinbarg

#### a. General Legal Standards

In order to demonstrate liability under §1983 as to any particular defendant, a plaintiff must first establish that that defendant acted under color of state law and that his actions violated rights secured by the Constitution and/or laws of the United States.  *See Baker v. McCollan*, 443 U.S. 137 (1979).  The plaintiff also must make a clear showing that the defendant was personally involved in the activity that forms the basis of the complaint.  *See Rizzo v. Goode*, 423 U.S. 362, 377 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Moreover, §1983 liability cannot be premised upon mere allegations of *respondeat superior*, *i.e.*, supervisory liability; rather, a defendant can only be liable under §1983 if the plaintiff shows that he personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct.  *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Bellamy*, 729 F.2d at 421.  A supervisory official's awareness of a complaint of allegedly illegal conduct, and his subsequent failure to take corrective action, is insufficient to trigger §1983 liability.  *See Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988).  Furthermore, mere participation in the grievance process, including signing a grievance response, is insufficient to show personal involvement.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lee v. Michigan Parole Board*, 104 F. App'x 490, 493 (6th Cir. 2004).  Rather, liability under §1983

---

[2] The MDOC Defendants also assert that Knop's claims are barred by qualified immunity. Because the Court is recommending that summary judgment be granted in the MDOC Defendants' favor on other grounds, it need not address the merits of this argument.

must be based upon active unconstitutional behavior, not a "mere failure to act." *Shehee*, 199

F.3d at 300 (internal quotations omitted).   In this case, with respect to six of the MDOC

Defendants – namely, Defendants Warren, Heyns, Friess, McCarthy, Jackson, and Zinbarg –

Knop has failed to satisfy these standards.

### b.     Defendants Warren and Heyns

Defendant Warren is the Warden of WHV.  (Doc. #1 at 3).  In her complaint, Knop does

not allege that Warren actually denied her the medication she sought (Armour Thyroid

Hormone); rather, Knop merely asserts that she sent a letter to Warren advising that she was not

receiving this medication, and that Warren failed to take steps to rectify the situation.  (Doc. #75

at 4).  In her affidavit, Warren avers that, as Warden, she does not get involved in the day-to-day

healthcare treatment of individual prisoners.  (Doc. #57 at Ex. 1, ¶3).  Indeed, she clearly

indicates that she does not have any role in advising on a course of action for medical treatment

of a prisoner, nor does she play any role in the approval or denial of any particular course of

medical treatment.  (*Id.*).  Knop presented no evidence to counter Warren's common sense

averments.  Viewing the allegations in the light most favorable to Knop, then, it is clear that

Warren did not have sufficient personal involvement in the events at issue to impose upon her

§1983 liability; rather, at most, she merely failed to act when Knop advised that she was not

receiving medication she believed she needed.[3]  *See, e.g., Surles v. Leach*, 2013 WL 5913388, at

*5 (E.D. Mich. Oct. 31, 2013) (plaintiff's §1983 claim against prison warden failed where he

failed to allege that warden was personally involved in or "implicitly authorized or approved"

---

[3] In her response to the MDOC Defendants' motion for summary judgment, Knop also asserts that Warden Warren became "directly involved" when she rejected one of Knop's grievances (WHV-2013-08-3908-12E1) as untimely at Step II.  (Doc. #75 at 3).  As discussed in greater detail elsewhere in this Report and Recommendation, however, mere participation in the grievance process, including signing a grievance response, is insufficient to show personal involvement.  *See Shehee*, 199 F.3d at 300; *Lee*, 104 F. App'x at 493.

acts that deprived the plaintiff of his constitutional rights).

Defendant Heyns is the Director of the MDOC. (Doc. #1 at 3). As with Defendant Warren, Knop does not allege in her complaint that Heyns had any direct, personal involvement in her medical care. Rather, she alleges only that, on October 4, 2012, she sent a letter to Heyns requesting a refill of Armour Thyroid Hormone. (*Id.* at 57). According to Knop, Heyns acted with "deliberate medical indifference" when he failed to respond to this letter or take action to ensure that Knop received the medication she desired. (*Id.* at 76; Doc. #75 at 30). For the same reasons discussed above, even taking Knop's allegations as true, she has failed to allege the requisite level of personal involvement to impose §1983 liability against Heyns. *See, e.g., Sanders v. Mich. Dep't of Corr.*, 2011 WL 4852269, at *3 (E.D. Mich. Oct. 12, 2011) (dismissing §1983 claim against Heyns where plaintiff failed to allege "any facts which indicate that Director Heyns personally or intentionally violated his constitutional rights").

### c.    Defendants Zinbarg, Friess, McCarthy, and Jackson

With respect to Defendants Friess, McCarthy, Jackson, and Zinbarg, Knop essentially alleges only that these individuals participated to various degrees in processing the prison grievances that she filed.[4] With respect to Defendant Zinbarg, he is presently, and was at all relevant times, a psychologist at WHV. (Doc. #57 at Ex. 12, ¶1). In her complaint, Knop's only allegation against Zinbarg is that he responded at Step I to one of the grievances she filed (Grievance No. WHV-2012-12-5817-12b). (Doc. #1 at 11-12). In his affidavit, however, Zinbarg affirmatively states that it was Defendant Macari who responded to this grievance – a fact that is borne out by the documentation that Knop attaches to her complaint. (Doc. #57 at Ex.

---

[4] In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130 ("Prisoner/Parolee Grievances"). State prisoners must first complete the process outlined in the Policy – including pursuing a grievance through all three steps of the grievance process – before the prisoner may challenge the alleged wrongful conduct in a lawsuit.

12, ¶4; Doc. #1-2 at 70).  According to Zinbarg, as Lead Worker of Outpatient Mental Health Services, he reviewed Defendant Macari's response to this grievance; agreed with the determination that there was no violation of policy, procedure, or rule; and signed his name as reviewer of the response.  (Doc. #57 at Ex. 12, ¶4).  Regardless, however, it matters not whether Zinbarg responded to Knop's grievance (as she alleges) or merely reviewed Macari's grievance response (as he asserts) – "… liability under §1983 'may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance.'"  *Lyons v. Leach*, 2013 WL 6178578, at *6 (E.D. Mich. Nov. 26, 2013) (quoting *Lee*, 104 F. App'x at 493).  *See also Shehee*, 199 F.3d at 300; *Lee*, 104 F. App'x at 493.

As for Defendants Friess, McCarthy, and Jackson, Knop's allegations against them are muddled at best.  After a thorough review of Knop's complaint and supplemental complaint (and attachments), as well as the MDOC Defendants' motion for summary judgment and supporting documents, it appears that Knop is alleging that all three of these defendants denied her grievances at various steps of the grievance process.  To summarize:

- Defendant Friess, who at all relevant times was a Health Unit Manager ("HUM") at WHV, either responded to (or reviewed responses to) ten grievances filed by Knop during the relevant time period.  (Doc. #1 at 79, 84, 96; Doc. #1-1 at 6, 13, 19, 26; Doc. #1-2 at 3, 48, 52).  In those grievances, Knop primarily complained about the fact that she had not received a refill of her Armour Thyroid Hormone.  In her affidavit, Defendant Friess indicates that, in responding to Knop's grievances, she reviewed Knop's electronic medical record ("EMR") and determined that the issues presented had been reviewed by a medical service provider ("MSP").  (Doc. #57 at Ex. 3, ¶3).  It was her responsibility as Health Unit Manager to follow the instructions and directives provided by the MSP. (*Id.*).  Friess further states, under oath, that after reviewing Knop's medical record, it appeared that her medical concerns were being addressed in compliance with acceptable medical standards of care and at no time did she have reason to believe that Knop's medical issues were being ignored.  (*Id.*).

- Defendant McCarthy was a Nurse Supervisor at WHV at the time of the events at issue.  (Doc. #1 at 4).  It appears that McCarthy either responded to (or reviewed responses to) four grievances filed by Knop during the relevant time period.  In

8

three of these grievances, Knop was complaining about the fact that she had not received a refill of Armour Thyroid Hormone. (Doc. #1 at 79, 84, 96). On each occasion, it appears from the records submitted by Knop that McCarthy reviewed Knop's EMR and determined that an MSP had requested approval from the Regional Medical Officer ("RMO") to refill this prescription. (*Id.* at 80 ("Medication was renewed 9.10.12 after RMO review."), 86 ("EMR reflects chart review by Medical Provider who requested RMO approval for medication. Prisoner was seen for Chronic Care apt. 9.10.12; meds ordered."), 98 ("A review of the medical health records reflects that the prisoner had a chronic care appointment on 9/10/12 at that time her medication was changed to Synthroid and at that visit she was informed that this new medication would be restricted.")). According to McCarthy's affidavit, her grievance responses were based on the information contained in Knop's EMR. (Doc. #57 at Ex. 6, ¶3). Knop does not attribute any other actions or inactions to McCarthy, and McCarthy affirms that her only involvement was to review and respond to these grievances. (*Id.* at ¶4).

- Defendant Jackson was, at all times relevant to this lawsuit, an Acting Nurse Supervisor at WHV. (Doc. #57 at Ex. 7, ¶1). Again, according to Knop's complaint, Jackson's only involvement in the events at issue consisted of responding to (or reviewing responses to) Knop's grievances. (Doc. #1 at 23, 29, 95; Doc. #1-1 at 6, 26; Doc. #1-2 at 52). In each case, it appears that Jackson reviewed Knop's EMR and determined that she had been seen by an MSP and interventions had been initiated. (Doc. #1 at 95 ("The medication that the grievant is requesting was not denied, an alternative treatment medication was suggested and ordered. Synthroid Medication was ordered and is currently being dispensed.")[5]; Doc. #1-1 at 6 ("Medical records indicate grievant was seen by Medical Service Provider on 11/05/2012 and labs were ordered …."), 28 ("Medical records indicate grievant was seen by a Medical Service Provider on 03/18/2013, interventions were initiated."); Doc. #1-4 at 93 ("Per Electronic Medical Records (EMR) Armour Thyroid pill was renewed on 01/15/2013 ….")). In her affidavit, Jackson makes clear that she was not one of Knop's direct treatment providers and her "involvement was limited to the grievance process." (Doc. #57 at Ex. 7, ¶4). Knop has come forward with no evidence to the contrary.

As demonstrated above, the evidence establishes that Defendants Friess, McCarthy, and

---

[5] In her response to the MDOC Defendants' motion, Knop appears to assert that Jackson was deliberately indifferent to her serious medical need when she failed to "check with med lines to find out if [she] was receiving the restricted – Synthroid." (Doc. #75 at 24). Apparently, there was some period of time during which Synthroid had been prescribed for Knop, but was deemed "restricted" (*i.e.*, Knop was required to stand in line to receive this medication each day). Knop claims that she did not know this and, thus, did not receive this medication for some period of time. Even if this is true, however, Knop has not established that Jackson was deliberately indifferent in failing to discern and correct this logistical issue. At most, Jackson's alleged conduct would constitute negligence, which is not actionable under §1983. *See Broyles v. Correctional Medical Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012).

Jackson played no direct role in prescribing (or declining to prescribe) Armour Thyroid Hormone for Knop. Rather, each of these individuals was simply responsible to some degree for responding (and/or reviewing responses) to one of the many grievances Knop filed regarding this and other issues during the relevant period of time. Again, however, the case law clearly establishes that merely participating in the grievance process is not a basis for §1983 liability. *See, e.g., Lee* 104 F. App'x at 493 ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Pugh v. Holden*-Selby, 2013 WL 5874727, at *5 (E.D. Mich. Oct. 30, 2013) (same). As such, summary judgment is appropriate in favor of these individual defendants on Knop's claims against them.

> **2.      *Knop Has Failed to Establish an Eighth
>            Amendment Claim Against Defendants Pandya,
>            Slagter, Sanders, Widgeon, McCrary, Macari, and Shinabery***

> a.      *General Legal Standards*

Reading her complaint generously, Knop does make some more specific allegations that the failure of Defendants Pandya, Slagter, Sanders, Widgeon, McCrary, Macari, and Shinabery to provide certain medical care violated her Eighth Amendment right to be free from cruel and unusual punishment. The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain" upon inmates. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (internal citations omitted). "'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

The Sixth Circuit has succinctly explained the standards that a plaintiff must satisfy to

state a claim for deliberate indifference to her serious medical needs:

> A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." Mere negligence will not suffice. Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment.

*Broyles v. Correctional Medical Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012)

(internal citations omitted).

Moreover, a plaintiff must demonstrate that a prison official knew of and disregarded an excessive risk to inmate health or safety by showing that (1) the official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (2) the official actually drew the inference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). As the Sixth Circuit has recognized, the requirement that the official subjectively perceived a risk of harm and then disregarded it is "meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). The *Comstock* court further explained:

> When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation. On the other hand, a plaintiff need not show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.' Instead, 'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'

*Id.* (internal citations omitted). Knop's own allegations, as well as the record evidence,

demonstrate that, under these standards, none of these seven MDOC Defendants was deliberately indifferent to a serious medical need.

b.      *Defendant Pandya*

With respect to Defendant Pandya, former Regional Medical Officer ("RMO") for the MDOC's Southern Region, Knop alleges that he was deliberately indifferent when, after approving her providers' requests for Armour Thyroid Hormone in the past, he suddenly declined to do so in September 2012.  (Doc. #75 at 12-18).  Pandya submitted an affidavit in support of the MDOC Defendants' motion for summary judgment, in which he clearly stated that he did not provide any direct patient care to Knop, nor did he directly supervise any of the MSPs who were responsible for doing so.  (Doc. #57 at Ex. 2, ¶4).  Knop has not disputed these assertions.  Rather, it appears that, as RMO, Pandya was simply responsible for making determinations regarding off-formulary medication requests.  (*Id.* at ¶3).

In this case, according to Defendant Pandya's affidavit, as well as the relevant medical records, he received six non-formulary medication requests for Armour Thyroid Hormone for Knop between October 2007 and April 2013.  (*Id.* at ¶¶5-7).  All but one of these requests were <u>approved</u> by Defendant Pandya.  (*Id.* at ¶6; Doc. #58 at 2-6).  With respect to the September 2012 request, it appears that Dr. Jeffrey Stieve (a non-party) made an entry in Knop's EMR on August 31, 2012, in which he deferred a request for approval of Armour Thyroid Hormone and asked that Knop's "hypothyroid plan and ALL MEDS" be reviewed with the Regional Medical Director.  (Doc. #58 at 9).  Having reviewed Dr. Stieve's entry, Dr. Pandya states as follows in his affidavit:

> According to the EMR entry, the Non-Formulary Medication request from 9/7/12 indicates that I entered documentation regarding that request on 10/15/12.  I referred the Plaintiff's medical practitioner to review a response provided on 8/31/12 by Dr. Stieve.  I indicated that per my

12

review, there was no evidence in the EMR that the review was done.  I
recommended that the medical practitioner review with the lead physician
and the RMD/UpToDate ….

(Doc. #57 at Ex. 2, ¶7).  In other words, when Pandya reviewed Dr. Stieve's entry on September

7, 2012, he determined that there was no indication that Knop's hypothyroid plan and

medications had been reviewed with the Regional Medical Director and, consequently, he could

not approve the request.  It is important to note, however, that Pandya did not deny the request –

he merely deferred decision on it.  (Doc. #58 at 7).  And, by Knop's own admission, the request

was subsequently approved, as she began receiving Armour Thyroid Hormone again in January

2013.[6]  (Doc. #1 at 28).

In his affidavit, Pandya further states that all of his decisions regarding Knop's medical

treatment – including his decision to defer approval of Armour Thyroid Hormone in September

2012 – involved him exercising his medical judgment.  (Doc. #57 at Ex. 2, ¶10).  Knop has

offered no evidence to the contrary.  Thus, although Knop might not have received the exact

medication she preferred, or on the exact timeline she desired, the evidence belies her allegations

of deliberate indifference by Defendant Pandya.  The law in this Circuit is clear that mere

differences of opinion or disagreements between a prisoner and prison medical staff over the

kinds of treatment a prisoner needs do not rise to the level of deliberate indifference.  *See*

*Umbarger v. Corr. Med. Servs.*, 93 F. App'x 734, 736 (6th Cir. 2004).  Courts distinguish

between "cases where the complaint alleges a complete denial of medical care and those cases

where the claim is that a prisoner received inadequate medical treatment."  *Alspaugh v.*

*McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (internal quotations omitted).  While the former

cases may evidence the type of culpability required to state a deliberate indifference claim, the

---

[6] Knop does not dispute that in the interim, between September 2012 and January 2013, she was
prescribed and received Synthroid, an alternative thyroid medication.  (Doc. #1 at 25).

latter amount to assertions of medical negligence and do not satisfy the requisite subjective component of such claims. *Id.* Indeed, courts have recognized, "In cases where an inmate alleges deliberate indifference but the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain decisions made by the medical staff, the defendant is entitled to summary judgment." *Allison v. Martin*, 2009 WL 2885088, at *6 (E.D. Mich. Sept. 2, 2009) (internal citations omitted); *see also Umbarger*, 93 F. App'x at 736.

That is precisely the case here, where the allegations contained in Knop's complaint and response brief establish that she received ongoing treatment (including medication) for her thyroid condition. Defendant Pandya did not ignore Knop's concerns; rather, as RMO, he reviewed Knop's EMR, determined that the review requested by Dr. Stieve had not taken place, and, as a result, deferred a decision on Armour Thyroid Hormone. While Defendant Pandya might not have provided Knop with the exact medication she desired, on the exact timeline she requested, she has not sufficiently shown deliberate indifference on Dr. Pandya's part to overcome his summary judgment motion. *See Alspaugh*, 643 F.3d at 169; *Allison*, 2009 WL 2885088, at *6; *Umbarger*, 93 F. App'x at 736.

> c.   *Defendant Slagter*

As for Defendant Slagter, he was, at all relevant times, an Administrative Assistant at WHV and was responsible for assisting Warden Warren in responding to prisoner letters. (Doc. #1 at 4; Doc. #57 at Ex. 4, ¶1). In her complaint, Knop alleges that she kited the Warden's office on September 20, 2012, requesting that her Armour Thyroid Hormone medication be refilled. (Doc. #1 at 55). According to documents provided by Knop, Slagter responded to Knop on behalf of Warden Warren on September 24, 2012, stating that, "Prescribing medication to

14

prisoners is outside the scope of my duties at WHV as the Warden's Administrative Assistant. Your kite and the enclosed packet was forwarded to the Health Unit Manager for any action that would be necessary." (Doc. #1-4 at 25).

Knop asserts that she also kited Warden Warren on October 15, 2012, again requesting a refill of her Armour Thyroid Hormone. (Doc. #1-4 at 36). Again, Slagter responded to Knop's kite, noting that, as she previously had been advised, issues regarding the prescription of medication must be addressed by the prison's health care office. (*Id.* at 41). Knop was further advised that, "Additional kites to the Warden's Office on this matter may be reviewed and filed without response."[7] (*Id.*). Responding to these two kites on behalf of Warden Warren was the extent of Slagter's involvement in the events at issue in this case. (Doc. #57 at Ex. 4, ¶5).

With respect to Knop's allegations against Slagter, she simply has not shown that he acted with deliberate indifference to her serious medical need. Indeed, the very documents Knop attached to her complaint establish that Slagter's only role in the events at issue consisted of receiving and responding to Knop's two kites about Armour Thyroid Hormone. In his affidavit, Slagter states that, as an administrative assistant – not a medical professional – he was not authorized to approve or disapprove requests for prescription medication. (*Id.* at ¶3). However, Slagter properly notified health care of Knop's concerns and advised her to communicate directly with health care about these issues. (*Id.* at ¶¶3-5). Knop has not offered any evidence that Slagter, armed with knowledge of her particular medical condition, did anything purposely

---

[7] In her response to the MDOC Defendants' motion, Knop asserts that Warden Warren "was deliberate[ly] indifferent because plaintiff was told writing of any future kite or letter, there would be no response from the Wardens [sic] Office." (Doc. #75 at 3). As set forth above, however, Knop was merely advised that responses may not be provided to future kites or letters "on this issue" (i.e., regarding Armour Thyroid Hormone). (Doc. #1-4 at 41). The point clearly was to encourage Knop to direct her request to the proper individuals, and Knop cannot require the prison to alter its own commonsense division of labor simply by directing her inquiries to others.

to deny or delay "access to medical care" or to intentionally interfere "with the treatment once prescribed." *Estelle*, 429 U.S. at 104-05. Thus, Slagter is entitled to summary judgment on Knop's claims against him.

### d.    Defendant Sanders

Knop alleges that Defendant Sanders, a Dietician at WHV, was deliberately indifferent to her serious medical needs when, in December 2012, she ceased to provide her an evening snack. (Doc. #1 at 4, 40). Sanders indicates in her affidavit that, beginning in July 2012, she provided an evening snack to Knop because she was taking iron supplements twice a day and experiencing nausea as a result. (Doc. #57 at Ex. 5, ¶3). Sanders further indicates that, on December 17, 2012, she discontinued Knop's evening snack, determining that Knop could take iron with meals instead. (*Id.*). Apparently, Knop then kited health care on January 8, 2013, complaining of constipation because she was out of vitamin C from the prison store (which allegedly helps with absorption of iron and reduces constipation). (*Id.*). Knop was seen by Sanders on that day "in regards to wanting the snack back," and was advised that the snack was not medically indicated. (*Id.*). It appears Knop was under the impression that she required a high-iron snack, in order to keep her iron levels up, while Sanders claims to have repeatedly informed Knop that the purpose of the snack was to help with gastric upset caused by the iron supplement, not to build up her iron stores. (*Id.*). As a result, Knop filed a grievance against Sanders, alleging that Sanders had "no justifiable reason" for discontinuing her snack. (Doc. #1 at 43; Doc. #1-1 at 3).

In light of these facts, Knop has not established that Sanders was deliberately indifferent to her serious medical needs. Although Knop apparently would have preferred to continue to receive an evening snack, Sanders' affidavit makes clear that she determined that such a snack was no longer medically indicated. (Doc. #57 at Ex. 5, ¶3). By Knop's own admission, she was

16

receiving thyroid medication (albeit not the medication she preferred for a brief period of time), was taking iron supplements twice a day, and was receiving three meals a day; the fact that she disagrees with Sanders' medical determination that she could take the iron pills with meals – thus obviating the need for an evening snack – does not establish a constitutional violation. Indeed, this is a fairly typical situation in which a prisoner plaintiff receives some medical treatment and merely disagrees with the treating professionals as to the proper course.  Again, such differences of opinion do not rise to the level of deliberate indifference.  *See Umbarger*, 93 F. App'x at 736; *Thomson v. Spitter*, 2014 WL 235485, at *10 (W.D. Mich. Jan. 22, 2014) ("a difference of opinion between a prisoner and the prison medical staff about medical treatment does not constitute deliberate indifference").

> e.     *Defendant Macari*

Defendant Macari was at all times relevant to this lawsuit a Community Health Services Manager at WHV.  (Doc. #57 at Ex. 10, ¶1).  In her complaint, which again is far from clear, Knop appears to allege that Macari denied a request that she made for a psychiatric evaluation. (Doc. #1 at 66).  In making this allegation, Knop references a September 27, 2012 letter that she wrote to Macari, in which she indicated her belief that her change from Armour Thyroid Hormone to Synthroid "will most likely require a psychiatric evaluation," and requested that he assist her with this.  (Doc. #1-4 at 54).  In his affidavit, however, Macari states that he did not deny Knop a psychiatric evaluation; rather, he merely informed her of the proper procedure by which to be referred for mental health services.  (Doc. #57 at Ex. 10, ¶3).  Indeed, Macari's response to Knop's letter – which is attached to Knop's complaint – states, in relevant part:

> I am in receipt of your kite requesting a psychiatric evaluation due to changes made to your health care medications.  Please be advised that if the health care dept. believes a psychiatric evaluation is required, they will complete a referral for same.  Your kite has been sent to the health unit

manager for response to this issue.

(Doc. #1-4 at 55).  Macari further indicates in his affidavit that if the health care department believed a change in Knop's thyroid medication required a psychiatric evaluation, a referral would have been made and she would have been evaluated pursuant to applicable MDOC policies.  (*Id.* at ¶4).  Again, Knop does nothing more than allege that Macari disagreed with her belief that additional medical interventions (in this case, a psychiatric evaluation) were warranted, which does not establish deliberate indifference to a serious medical need.  *See, e.g., See Umbarger*, 93 F. App'x at 736; *Thomson*, 2014 WL 235485, at *10.[8]

g.    *Defendant Widgeon*

Knop's allegations regarding Defendant Widgeon are even more tenuous.  Widgeon is presently, and was at all relevant times, a Probation Agent at the 22nd Circuit Court, Washtenaw County, in Ann Arbor, Michigan.  (Doc. #57 at Ex. 8, ¶1).  In her complaint, Knop appears to allege that Widgeon failed to include information about her missing thyroid gland in the presentence investigation report ("PSI") that he prepared prior to her incarceration.  (Doc. #1 at 61-62).  In his affidavit, however, Widgeon indicates that, in preparing the PSI, he reported on Knop's medical condition based on the information she provided at the presentence interview.  (Doc. #57 at Ex. 8, ¶4).  More importantly, however, there is no indication whatsoever that Widgeon was aware that by omitting mention of Knop's missing thyroid gland, he was placing

---

[8] To the extent Knop alleges that Macari was deliberately indifferent in failing to provide her with a proper mental health diagnosis (Doc. #1 at 68), Macari denies this allegation, indicating that at the time he interviewed Knop on January 8, 2013, he was functioning as a manager responsible for responding to a prisoner grievance, not as a clinical psychologist performing a mental health evaluation.  (Doc. #57 at Ex. 10, ¶5).  He further asserts that had he made "decisions regarding the medical complications associated with her medication, [he] would have been acting outside the scope of [his] professional license," as he was a limited license psychologist, not a medical doctor.  (*Id.*, ¶¶3, 8).  Thus, according to Macari, rendering a diagnosis was neither appropriate nor necessary at that time.  (*Id.*, ¶¶5, 8).  Knop has offered no evidence to the contrary and, thus, this allegation fails.

Knop at substantial risk of serious harm.  Indeed, Widgeon correctly indicates in his affidavit that to the extent Knop is alleging that her PSI report caused her not to have the proper medication in prison, such an allegation is disproved by the very facts on which Knop relies.  It would necessarily be up to prison medical staff to determine what medications, if any, Knop required, regardless of the PSI's contents.  This is borne out by the fact that, despite Knop's PSI being prepared *prior to* her incarceration, for years *while in prison*, she received Armour Thyroid Hormone medication.  Thus, Knop has shown no link whatsoever between any omission on Widgeon's part and the years-later denial of the medication she desired.  For all of these reasons, Knop cannot succeed on her deliberate indifference claim against Widgeon.

### h.    *Defendant Shinabery*

Knop's allegations against Defendant Shinabery relate to documents she submitted to the parole board regarding Knop.  For example, Knop alleges that Shinabery, a psychologist at WHV, acted with "deliberate medical and mental health indifference" when she included "inaccurate information" in a parole board evaluation that eventually was placed in Knop's MDOC file.[9]  (Doc. #1 at 9, 26, 61).  It is unclear exactly what this "inaccurate information" is. In her affidavit, Shinabery indicates that she interviewed Knop on May 5 and May 11, 2011, in conjunction with the preparation of this parole board evaluation, and on May 16, 2011, the completed evaluation was entered into Knop's EMR.  (Doc. #57 at Ex. 11, ¶4).  On July 20, 2011, Knop was provided with a copy of the parole board evaluation and was informed that any factual errors would be corrected by addendum, if so requested.  (*Id.*).  Shinabery never received such a request.  (*Id.*).

---

[9] Shinabery was neither Knop's primary therapist nor mental health treatment provider during the relevant time period, but simply was assigned the responsibility of conducting a parole board evaluation of Knop in 2011.  (Doc. #57 at Ex. 11, ¶¶3, 7).

It appears that Knop subsequently filed a grievance challenging Shinabery's parole board evaluation on the basis that it contained this unspecified "inaccurate information."[10]  (Doc. #1-2 at 63).  In a Step I grievance response, Defendant Macari advised Knop that she could "present verifiable documentation to support that specific items of fact were not presented correctly in the report," at which time "an addendum may be authored making the needed corrections."  (*Id.* at 64).  Again, there is no indication that Knop ever presented such documentation.  Regardless, however, there simply is no indication that Shinabery's actions in preparing the parole board evaluation were undertaken with a culpable state of mind or otherwise constitute deliberate indifference to a serious medical need.

### i.    *Defendant McCrary*

Lastly, Knop alleges that Defendant McCrary, a psychologist at WHV, completed her Assaultive Offender Program ("AOP") termination report on May 7, 2008, without reading her "Relapse Prevention Plan."  (Doc. #1 at 5-8).  McCrary acknowledges that this is true; however, he indicates that he did so because Knop "never submitted the written relapse plan" to him.  (Doc. #57 at Ex. 9, ¶3).  McCrary further admits Knop's allegation that, on June 27, 2008, he submitted to the Parole Board a written addendum to his termination report, in order to reflect the fact that Knop had failed to submit a written relapse plan.  (*Id.*).  McCrary met with Knop

---

[10] Knop also challenged (and still challenges, apparently) Shinabery's evaluation on the basis that she is not a psychiatrist or licensed psychologist and, thus, should not be performing parole board evaluations.  (Doc. #1 at 69).  According to Shinabery, however, these evaluations are assigned to MDOC mental health staff on a rotating basis, and are completed by social workers, limited licensed psychologists, or fully licensed psychologists, depending on what professionals comprise the mental health staff at any given time.  (Doc. #57 at Ex. 11, ¶3).  Moreover, Defendant Macari responded to Knop's grievance regarding this issue and concluded that Shinabery's evaluation "was authored by a Qualified mental health Professional operating in the scope of the license and responsibilities while employed for the MDOC."  (Doc. #1-2 at 64).  Thus, there is no merit to Knop's allegation that Shinabery should not have conducted her 2011 parole board evaluation.

only once at WHV, on October 6, 2009, in response to a kite submitted by Knop to the Psychological Services Unit supervisor regarding AOP verification. (*Id.* at ¶4). Knop stated at that time that she did not want to speak with McCrary. (*Id.*). Knop makes no further allegations against McCrary in her complaint or supplemental complaint. The statute of limitations for a deliberate indifference claim under §1983 is three years. *See, e.g., Jones v. Richardson*, 2008 WL 907383, at *9 (E.D. Mich. Mar. 31, 2008). Because Knop's last interaction with McCrary occurred in 2009 – well outside the three-period preceding the filing of Knop's complaint in this matter – summary judgment is appropriate on her claims against him.

### *3.   Knop's Motion for Summary Judgment Should be Denied*

Lastly, for all of the reasons stated above, summary judgment in Knop's favor should be denied. As set forth above, because Knop is the plaintiff in this case, to prevail on her summary judgment motion she must make a showing "sufficient for the court to hold that no reasonable trier of fact could find other than for [her]." *Calderone*, 799 F.2d at 259. Here, where the evidence clearly establishes that summary judgment in favor of the MDOC Defendants is appropriate, it is equally clear that Knop's motion for summary judgment [75] against these defendants should be denied.

## III.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that the MDOC Defendants' Motion for Summary Judgment [**57**] be **GRANTED** and that Knop's Motion for Summary Judgment [**75**] be **DENIED**.

Dated: February 4, 2015          s/David R. Grand
Ann Arbor, Michigan         DAVID R. GRAND
                         United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 4, 2015.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager