UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORI KNOP, #661291,

                Plaintiff,         Civil Action No. 14-10185
                                             Honorable Linda V. Parker
v.                                         Magistrate Judge David R. Grand

MILLICENT WARREN, *et al.*,

                Defendants.
_____/

### REPORT AND RECOMMENDATION TO GRANT THE MEDICAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [120]

Before the Court is a motion for summary judgment filed by Defendants Dr. Mohammad Azimi, Dr. Robert Lacy, Dr. Claire Pei, Dr. Pu Qin, Dr. Sylvia McQueen, and Alice Kramer, P.A. (collectively the "Medical Defendants") on May 28, 2015. (Doc. #120). Plaintiff Lori Knop ("Knop"), who formerly was incarcerated at the Women's Huron Valley Correctional Facility ("WHV") but currently is on parole, was ordered to respond to this motion on or before June 22, 2015. (Doc. #123). On July 1, 2015, when Knop had failed to timely respond to the Medical Defendants' motion, the Court ordered Knop to show cause, in writing, on or before July 13, 2015, why it should not recommend that the motion be granted. (Doc. #124).

On July 6, 2015, the Clerk's Office docketed "Plaintiff's Motion for Extension of Time Due to Receiving Requests for Medical Records and Depositions from Doctors Showing Physical Injury of 23 Tumors." (Doc. #125). In that motion, Knop requested an extension of time – to August 22, 2015 – to respond to the Medical Defendants' motion for summary judgment due to her "need to gather additional medical records and show the court how the defendants have not answered the Plaintiffs [sic] complaint." (*Id.*). Consequently, this Court issued an order vacating its order to show cause and granting Knop an extension of time, to

August 22, 2015, to respond to the Medical Defendants' motion. (Doc. #126). The Court further stated:

> … Plaintiff has requested (and been granted) numerous extensions of time to respond to other motions and to take other actions in this case, and nevertheless has failed in some respects to comply with court deadlines. Thus, Plaintiff is again cautioned that her failure to timely file a response to Defendants' motion will result in a recommendation that Defendants' motion be granted and/or that Plaintiff's action be dismissed under Fed. R. Civ. P. 41(b). **No further extensions of time to respond to Defendants' motion (Doc. #120) will be granted.**

(*Id.* at 2) (emphasis in original). To date, Knop has failed to file a response to the Medical Defendants' motion for summary judgment.[1]

An Order of Reference was entered on May 13, 2014, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). (Doc. #25). Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1(f). Here, despite the fact that Knop has been paroled since the filing of her complaint, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record and declines to order a hearing at this time.

## I.   RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the Medical Defendants'

---

[1] The Medical Defendants' motion is thus unopposed. *See* E.D. Mich. L.R. 7.1(c) ("A respondent opposing a motion must file a response, including a brief and supporting documents then available."), 7.1(e)(1) ("A response to a dispositive motion must be filed within 21 days after service of the motion"). For this reason alone, summary judgment should be granted to the Medical Defendants. *See Arndt v. Booker*, 2014 WL 7011980, at *2 (E.D. Mich. Dec. 11, 2014) ("'[T]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'") (quoting *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009)); *Lumpkin v. Deutsche Bank Nat. Trust Co.*, 2012 WL 3870353, at *2 (E.D. Mich. June 28, 2012) ("'[I]f a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion.'") (quoting *Humphrey v. United States Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008)).

2

Motion for Summary Judgment [**120**] be **GRANTED**.

## II. REPORT

### A. Background

At all relevant times, Knop was a State of Michigan prisoner confined at WHV. According to Knop's 77-page complaint (excluding attachments), she is bringing an Eighth Amendment denial-of-medical-care claim because she was allegedly deprived of Armour Thyroid Hormone ("Armour") during the five-month period from August 27, 2012 to January 15, 2013. Knop, who is missing a thyroid gland, alleges that, absent this hormone, she was at serious risk of excessive blood loss and anemia, and that the Medical Defendants, in allegedly denying her that medicine, were deliberately indifferent to her serious medical needs.[2]

### B. Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of

---

[2] On February 4, 2015, February 17, 2015, and April 27, 2015, this Court issued Reports and Recommendations to grant motions for summary judgment filed by several other defendants, and the factual backgrounds provided therein are hereby incorporated by reference. (Docs. #106, 109, 118).

the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

    **C.**    **Analysis**

In their motion, the Medical Defendants argue that summary judgment is appropriate because Knop's allegations do not establish the requisite level of personal involvement necessary for liability under §1983 and/or do not establish an Eighth Amendment deliberate indifference claim against them. (Doc. #120). These arguments are addressed below.

    *1.*    *The Requisite Level of Personal Involvement of Defendants McQueen and Azimi*

In order to demonstrate liability under §1983 as to any particular defendant, a plaintiff must first establish that that defendant acted under color of state law and that his actions violated rights secured by the Constitution and/or laws of the United States. *See Baker v. McCollan*, 443 U.S. 137 (1979). The plaintiff also must make a clear showing that the defendant was personally involved in the activity that forms the basis of the complaint. *See Rizzo v. Goode*, 423 U.S. 362, 377 (1976); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Moreover, §1983 liability cannot be premised upon mere allegations of *respondeat superior*, *i.e.*, supervisory liability;

4

rather, a defendant can only be liable under §1983 if the plaintiff shows that he personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct. *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Bellamy*, 729 F.2d at 421. A supervisory official's awareness of a complaint of allegedly illegal conduct, and his subsequent failure to take corrective action, is insufficient to trigger §1983 liability. *See Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). Rather, liability under §1983 must be based upon active unconstitutional behavior, not a "mere failure to act." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (internal quotations omitted). In this case, with respect to Defendants McQueen and Azimi, Knop has failed to satisfy these standards.

With respect to Dr. McQueen, there is no evidence that she was involved in Knop's medical care (as it relates to the claims in this lawsuit), or that she made any decisions related to Knops' medication or the course of treatment for her thyroid or anemia conditions. (Doc. #120-5). During the relevant time period, Dr. McQueen was a Vice President for Clinical Services for Corizon, and she has affirmed that, in that capacity, she was not personally involved in, nor did she direct, specific inmate patient care. (*Id.* at ¶3). Knop has come forward with no evidence to the contrary.

Likewise, there is no indication in Knop's medical records that Dr. Azimi was involved in Knop's medical care with respect to her thyroid or anemia conditions. (Doc. #122-1). In his affidavit, Dr. Azimi affirmed that he only treated Knop for gynecological issues, and he did not influence what type of thyroid medication or iron supplement she received from other medical staff. (Doc. #120-4 at ¶¶4-5). Again, Knop has offered no evidence suggesting otherwise.

In sum, Knop has failed to raise a material question of fact that Defendants McQueen and Azimi were not directly involved in prescribing (or declining to prescribe) Armour to her, or in

5

the treatment of her anemia. Accordingly, summary judgment in their favor is warranted.

### 2. *Knop Has Failed to Establish an Eighth Amendment Claim against Defendants Lacy, Pei, Qin, or Kramer*

Reading her complaint and amended complaint generously, Knop appears to allege that the failure of Defendants Lacy, Pei, Qin, and Kramer to provide certain medical care violated her Eighth Amendment right to be free from cruel and unusual punishment. The Eighth Amendment's Cruel and Unusual Punishment Clause prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain" upon inmates. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (internal citations omitted). "'Deliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eighth Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

The Sixth Circuit has succinctly explained the standards that a plaintiff must satisfy to state a claim for deliberate indifference to her serious medical needs:

> A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." Mere negligence will not suffice. Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment.

*Broyles v. Corr. Medical Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012) (internal citations omitted).

Moreover, a plaintiff must demonstrate that a prison official knew of and disregarded an

6

excessive risk to inmate health or safety by showing that (1) the official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (2) the official actually drew the inference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). As the Sixth Circuit has recognized, the requirement that the official subjectively perceived a risk of harm and then disregarded it is "meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). The *Comstock* court further explained:

> When a prison doctor provides treatment, albeit carelessly or inefficaciously, to a prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation. On the other hand, a plaintiff need not show that the official acted 'for the very purpose of causing harm or with knowledge that harm will result.' Instead, 'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'

*Id.* (internal citations omitted). Under these standards, Knop has failed to raise a material question of fact that Defendants Lacy, Pei, Qin, and Kramer were not deliberately indifferent to a serious medical need.

The record evidence establishes that, prior to September 2012, Knop was taking Armour to treat her long-existing thyroid condition. (Doc. #122-1 at 3-6). Armour is a thyroid hormone replacement medication derived from pig thyroid glands that includes both T4 and T3 thyroid hormones. (Doc. #120-6 at ¶6). Armour is not on the MDOC medication formulary; rather, the MDOC utilizes Synthroid, a synthetic thyroid hormone replacement, made up of T4, which the body converts into T3. (*Id.*). Because Armour is not on the MDOC formulary, a specific need for it must be shown, and it must be approved by the Regional Medical Officer ("RMO"). (*Id.* at ¶7). Up until September 2012, Knop had been approved to receive Armour based on her

assertion that she did not adequately convert T4 into T3.  (*Id.*).

On August 31, 2012, physician's assistant Alice Kramer reviewed Knop's chart and placed a request for renewal of her Armour prescription.  (Doc. #120-6 at ¶10; Doc. #122-1 at 8-9).  On that date, Regional Medical Director Dr. Jeffrey Stieve recommended deferring Knop's prescription for Armour, requesting that the treatment and medication plan for her hypothyroidism be reviewed.  (Doc. #120-6 at ¶10; Doc. #122-1 at 10).  The basis for deferring renewal of Knop's Armour prescription was a desire to review her course of treatment to determine whether there was a medical necessity for her to receive Armour rather than Synthroid.  (Doc. #120-2 at ¶15; Doc. #122-1 at 26).  Though an assertion that Knop does not adequately convert T4 to T3 previously had been relied on, Dr. Stieve did not see support for this determination in the record.  (*Id.*).  Thus, before approving Armour, Dr. Stieve sought an evaluation of whether Synthroid would effectively manage Knop's hypothyroidism.  (*Id.*).

Knop saw Dr. Pei on September 10, 2012, and was informed that she would be placed on Synthroid.  (Doc. #120-1 at ¶13; Doc. #122-1 at 19).  Knop became so upset and belligerent when presented with this information that the visit had to be discontinued.  (*Id.*).  Despite Knop's objections, Synthroid was ordered for her, and Dr. Pei instructed that it be administered to Knop at the medication line to ensure that she took it.  (Doc. #120-1 at ¶14; Doc. #122-1 at 17-22).  Dr. Pei also referred Knop to Mental Health Services for counseling on her coping skills regarding the medication change and ordered that her thyroid levels be re-tested in 6-8 weeks to determine the effectiveness of the Synthroid.  (Doc. #120-1 at ¶14; Doc. #122-1 at 20, 24).

When Knop saw Dr. Qin on November 5, 2012, however, she admitted that she had not taken medication for her thyroid from mid-August through the beginning of November.  (Doc. #120-3 at ¶18; Doc. #122-1 at 38-40).  And, despite assurances that she would begin taking

Synthroid, the evidence establishes that she continued to refuse to do so through mid-December 2012. (Doc. #120-3 at ¶¶20-21; Doc. #122-1 at 45, 54-57). Eventually, by January 14, 2013, when Knop continued to refuse to take Synthroid, Dr. Lacy requested that she be permitted to receive Armour, not because of a determination that Synthroid was ineffective, but because Armour was the only medication Knop would take. (Doc. #120-2 at ¶24; Doc. #122-1 at 65). The next day, Dr. Stieve approved this request. (Doc. #120-2 at ¶25; Doc. #122-1 at 67-68).

In summary, Knop simply has not shown that the Medical Defendants acted with deliberate indifference to a serious medical need. As the record evidence establishes, beginning in September 2012, Knop's medical providers attempted to determine whether it was medically necessary for Knop to receive the non-formulary Armour medication, or whether she could be effectively treated with the commonly-prescribed Synthroid medication. In order to make this determination, Knop was prescribed Synthroid and was to be monitored to determine how her body and thyroid levels responded. Knop, however, refused to take the medication prescribed or otherwise comply with her doctors' orders. Rather, she simply decided that she would not take any medication other than the specific one she personally desired.

The law in this Circuit is clear that mere differences of opinion or disagreements between a prisoner and prison medical staff over the kinds of treatment a prisoner needs do not rise to the level of deliberate indifference. *See Umbarger v. Corr. Med. Servs.*, 93 F. App'x 734, 736 (6th Cir. 2004). Courts distinguish between "cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (internal quotations omitted). While the former cases may evidence the type of culpability required to state a deliberate indifference claim, the latter amount to assertions of medical negligence and do not

9

satisfy the requisite subjective component of such claims. *Id.* Indeed, courts have recognized, "In cases where an inmate alleges deliberate indifference but the record demonstrates that the inmate received medical attention and is, in essence, filing suit because he disagrees with certain decisions made by the medical staff, the defendant is entitled to summary judgment." *Allison v. Martin*, 2009 WL 2885088, at *6 (E.D. Mich. Sept. 2, 2009) (internal citations omitted); *see also Umbarger*, 93 F. App'x at 736. That is precisely the case here, where the evidence establishes that Knop received ongoing treatment (including medication) for her thyroid condition. While the Medical Defendants might not have provided Knop with the exact medication she desired, she has not sufficiently shown deliberate indifference on the Medical Defendants' part to overcome their summary judgment motion. *See Alspaugh*, 643 F.3d at 169; *Allison*, 2009 WL 2885088, at *6; *Umbarger*, 93 F. App'x at 736. For these reasons, summary judgment is appropriate on Knop's Eighth Amendment claims against the Medical Defendants.[3]

### III. CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that the Medical Defendants' Motion for Summary Judgment [**120**] be **GRANTED**.

Dated: September 11, 2015  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

---

[3] Knop also vaguely alleges that she was again deprived of Armour over an eighteen-day period (from October 27, 2013 to November 13, 2013), and that she was not provided proper care for her anemia (including being prescribed a different supplement than she requested). However, the record evidence belies these allegations, too. Specifically, Knop's medical record indicates that she received Armour refills on October 27, November 10, and December 10, 2013. (Doc. #122-1 at 96). And, during this time period, she never kited health care to complain that she had not received her medication. (Doc. #120-1 at ¶32). Moreover, with respect to Knop's anemia, the evidence establishes that she was prescribed ferrous sulfate but refused to take that supplement because she believed her body needed chelated iron. (Doc. #122-1 at 70-72). Again, Knop's mere disagreement with her medical providers' decision to prescribe one supplement over another does not rise to the level of an Eighth Amendment violation. *See, e.g., Allison*, 2009 WL 2885088, at *6; *Umbarger*, 93 F. App'x at 736.

**NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 11, 2015.

                                                         s/Eddrey O. Butts
                                                         EDDREY O. BUTTS
                                                         Case Manager